UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROSE GIORDANO-FORKAN,

Plaintiff,

- against -

THE CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF EDUCATION; DENNIS
WALCOTT, CHANCELLOR OF NEW YORK CITY
DEPARTMENT OF EDUCATION; JENNIFER
JONES-ROGERS, PRINCIPAL OF P.S. 29, IN HER
OFFICIAL AND INDIVIDUAL CAPACITY;
CHRISTINE MILTON, ASSISTANT PRINCIPAL OF
P.S. 29, IN HER OFFICIAL AND INDIVIDUAL
CAPACITY, SCOTT WOLFSON, ASSISTANT
PRINCIPAL OF P.S. 29 IN HIS OFFICIAL AND
INDIVIDUAL CAPACITY,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

**ZACHARY W. CARTER**
Corporation Counsel of the City of New York
*Attorney for the Defendants*
100 Church St, Rm 2-142
New York, N.Y. 10007
spischl@law.nyc.gov

*Of Counsel:* Stephen P. Pischl
*Telephone*: (212) 356-2429
*Matter No.*:2013-046510

Jane Andersen,
Stephen P. Pischl,
Of Counsel.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

FACTUAL BACKGROUND...............................................................................2

ARGUMENT.....................................................................................................6

    POINT I .....................................................................................................6

        PLAINTIFF'S CAUSES OF ACTION PURSUANT TO § 1983, TITLE VII AND THE ADEA MUST BE DISMISSED FOR HER FAILURE TO STATE A CLAIM THAT IS PLAUSIBLE ON ITS FACE ...............................................................................................6

        A.    The Applicable Standard in Reviewing a Rule 12(b)(6) Motion to Dismiss ....................................6

        B.    Age and Gender Discrimination Claims.............................7

            1.    Plaintiff Has Not Suffered an Adverse Employment Action.................................................8

            2.    The Complaint Fails to Allege Facts Sufficient to Create a Plausible Inference of Discrimination .........................................................12

        C.    Age and Gender Retaliation Claims ..................................13

        D.    Hostile Work Environment Claim .....................................15

        E.    First Amendment Retaliation Claim ..................................17

    POINT II....................................................................................................21

        PLAINTIFF'S CLAIMS UNDER TITLE VII AND THE ADEA MUST BE DISMISSED AS AGAINST ALL INDIVIDUALLY-NAMED DEFENDANTS ........................................................21

    POINT III..................................................................................................22

        PLAINTIFF'S CLAIMS FOR VIOLATIONS OF THE FIRST AMENDMENT PURSUANT TO § 1983 AGAINST THE BOE MUST BE DISMISSED BECAUSE THERE IS NO OFFICIAL POLICY OR CUSTOM ALLEGED TO BE THE CAUSE OF THE CHALLENGED VIOLATIONS ......................................22

    POINT IV ..................................................................................................23

        CAUSES OF ACTION ALLEGING LIABILITY AGAINST THE CITY OF NEW YORK MUST BE DISMISSED IN THEIR ENTIRETY AS AGAINST AN IMPROPER PARTY ..........................23

CONCLUSION ...............................................................................................24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- x

ROSE GIORDANO-FORKAN,

                                  Plaintiff,

                - against -                                13 CV 06950 (GBD)

THE CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF EDUCATION; DENNIS
WALCOTT, CHANCELLOR OF NEW YORK CITY
DEPARTMENT OF EDUCATION; JENNIFER JONES-
ROGERS, PRINCIPAL OF P.S. 29, IN HER OFFICIAL
AND INDIVIDUAL CAPACITY; CHRISTINE
MILTON, ASSISTANT PRINCIPAL OF P.S. 29, IN
HER OFFICIAL AND INDIVIDUAL CAPACITY,
SCOTT WOLFSON, ASSISTANT PRINCIPAL OF P.S.
29 IN HIS OFFICIAL AND INDIVIDUAL CAPACITY,

                                  Defendants.

-------------------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF
THE DEFENDANTS' MOTION TO DISMISS
THE COMPLAINT PURSUANT TO FED. R.
CIV. P. 12(b)(6)**

**PRELIMINARY STATEMENT**

Plaintiff, Rose Giordano-Forkan ("plaintiff"), an elementary school teacher presently employed by defendant the Board of Education of the City School District of the City of New York ("BOE") (also know as and sued herein as the "Department of Education"), brings this action alleging violations of the First Amendment of the United States Constitution pursuant to 42 U.S.C § 1983 ("§ 1983"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"), N.Y. Executive Law §§ 290, et seq. ("SHRL"), and New York City Administrative Code §§ 8-101 ("CHRL"). Plaintiff alleges that defendants discriminated against her on the

basis of her age and gender, and subjected her to a hostile work environment. Plaintiff further alleges that defendants retaliated against her for filing complaints of discrimination with New York State Division of Human Rights ("SDHR") and the New York State Public Employment Relations Board ("PERB"), in violation of her rights under the First Amendment, Title VII and the ADEA.

Defendants now move for an order dismissing the Complaint in its entirety on the grounds that: (1) plaintiff's claims under SHRL and CHRL are barred for her failure to timely file a notice of claim, and for her failure to comply with the applicable statute of limitations; (2) plaintiff's claims for First Amendment retaliation pursuant to § 1983, Title VII and the ADEA must be dismissed for her failure to state a plausible claim; (3) plaintiff has failed to allege municipal liability for her claims against the BOE or its officers in their official capacities pursuant to § 1983; (4) plaintiff's claims under Title VII and the ADEA must be dismissed as against all individually-named defendants; and (5) plaintiff's causes of action alleging liability against the City of New York must be dismissed in their entirety as against an improper party.

## FACTUAL BACKGROUND[1]

Plaintiff alleges that she began working for the BOE as an elementary school teacher in 1995. See Complaint, Docket. No. 1, at ¶ 12. In 2005, plaintiff took a full-time, extended childcare leave from her previous job at P.S. 29. Id. at ¶ 13. Plaintiff alleges that,

---

[1] For the purposes of this motion to dismiss only, the material factual allegations asserted by plaintiff are deemed to be true. This Court may also consider the documents annexed to the Declaration of Assistant Corporation Counsel Stephen P. Pischl, dated February 25, 2014 ("Pischl Dec.") in reviewing this motion. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (court resolving motion to dismiss can consider: (1) documents that plaintiff attached to the pleadings; (2) documents to which plaintiff referred in the complaint; (3) matters of which judicial notice may be taken; (4) documents in plaintiff's possession; and (5) documents of which plaintiff had knowledge and upon which plaintiff relied in bringing the action) Unless otherwise indicated, the lettered exhibits referred to herein are annexed to the Pischl Dec.

beginning in March, 2011, she sought to return to a full-time teaching passion at P.S. 29. Id. at ¶ 14. Plaintiff further alleges that she reached out to defendant Jennifer Jones-Rogers, then principal of P.S. 29, expressing her desire to return to teaching at the school. Id. Plaintiff alleges that Principal Jones-Rogers strongly discouraged her to return to P.S. 29. Id. Ultimately, plaintiff alleges that she only was able to return to her former position at P.S. 29 with the assistance of Human Resources for the BOE. Id.

Immediately upon her return to P.S. 29, plaintiff alleges that Principal Jones-Rogers began to direct inappropriate comments toward her, and to ridicule her in front of her students and colleagues. Complaint at ¶ 15. Plaintiff alleges that this conduct escalated, and Principal Jones-Rogers began negatively criticism her professional work. Id. Plaintiff further alleges that Principal Jones-Rogers scrutinized her work more closely than other teachers, and would assign plaintiff additional work than her colleagues. Id. at 15.

Plaintiff sought assistance from her union, the UFT. Complaint at ¶ 16. On or about January 11, 2012, plaintiff alleges that a meeting took place between union officers and Principal Jones-Rogers. Id. Plaintiff avers that the parties reached an agreement in which Principal Jones-Rogers agreed that she would no longer directly rate plaintiff's work performance. Id. Plaintiff claims that the meeting did not have an effect on what she perceived as harassing behavior from the administration. Id. at ¶ 17. Plaintiff alleges that Assistant Principal Milton ("AP Milton") became markedly hostile and dismissive toward plaintiff. Id.

In March of 2012, AP Milton observed a lesson taught by plaintiff, and rated the lesson "Unsatisfactory." Complaint at ¶ 17. Plaintiff alleges that the rating was unwarranted and inaccurate. Id. at 18. Plaintiff further alleges that she should not have had to have her lessons formally observed, but had a right to elect an alternative assessment system. Id. at ¶ 19. Plaintiff

alleges that Principal Jones-Rogers required her to be rated in the formal assessment system against her wishes. Id. Plaintiff also alleges that the administration continued to scrutinize her work more closely than other staff members. Id. at ¶ 20. Plaintiff further alleges that Principal Jones-Rogers harassed her and humiliated her by publicly reprimanding her in front of her students and colleagues. Id.

Plaintiff alleges that a second meeting was held between UFT officers and Principal Jones-Rogers. Complaint at ¶ 21. Plaintiff reports that, in consideration for her agreeing to transfer out of P.S. 29, she would receive a Satisfactory end-of-year review for the 2011-2012 school year. Id. Despite her best efforts, however, plaintiff alleges that she was not able to secure a transfer during the summer of 2012. Id. at ¶ 22. According to plaintiff, when Principal Jones-Rogers learned that she had been unable to transfer as planned, she threatened to give plaintiff an Unsatisfactory end of year review ("U-rating"). Id. at ¶ 23.

Plaintiff ultimately was unable to obtain a transfer, and returned to P.S. 29 in August of 2012. Complaint at ¶ 24. Plaintiff alleges that Principal Jones-Rogers again refused to permit her to elect an alternative assessment system rather than being assessed by formal classroom observations. Id. Plaintiff alleges that she grieved the assessment termination, but that Principal Jones-Rogers denied the grievance. Id.

On or about October 26, 2012, plaintiff alleges that she filed a discrimination charge with the SDHR against Principal Jones-Rogers and the administration at P.S. 29, claiming gender and age discrimination. Id. at ¶ 26. Plaintiff alleges that the administration responded to her filing the complaint by writing disciplinary letters to her file; by reporting plaintiff to the Office of Special Investigation; and by placing plaintiff on a log of assistance. Id.

Plaintiff responded by filing a supplemental complaint with SDHR, alleging retaliation, and by filing an improper practice charge with PERB. Complaint at ¶ 27. Plaintiff asserts that the administration then escalated their mistreatment, providing her with logs of assistance, disciplinary letters, and rating her performance for the 2012-2013 school year as a U-rating. Id. at 28. Plaintiff alleges that the U-rating had the effect of "freezing her salary, per session and summer work opportunities, and other promotional opportunities." Id. at 29. To date, plaintiff alleges that she still continues to teach at P.S. 29 during the 2013-2014 school year. Id.

Plaintiff commenced the instant action on October 1, 2013. See Docket No. 1. On or about February 10, 2014, plaintiff agreed to resolve the improper practice charge she had filed with PERB, Rose Giordano-Forkan vs. Department of Education of the City School District of the City of New York, Case No. U-32412, by executing a stipulation of settlement. Settlement Agreement, Pischl Dec., Ex. "A." Pursuant to the terms of the executed stipulation of settlement, in consideration for plaintiff's agreement to withdraw the improper practice charge with prejudice, the BOE agreed to remove the U-rating for the 2012-2013 school year, and update plaintiff's service history to reflect a "Satisfactory" overall rating for said year. Id. at ¶¶ 2, 4. The BOE further agreed to remove six letters from plaintiff's file: dated June 3, 2013, May 20, 2013, May 10, 2013, May 6, 2013, December 18, 2012 and December 14, 2012. Id. at ¶ 3.

## ARGUMENT

### POINT I

**PLAINTIFF'S CAUSES OF ACTION PURSUANT TO § 1983, TITLE VII AND THE ADEA MUST BE DISMISSED FOR HER FAILURE TO STATE A CLAIM THAT IS PLAUSIBLE ON ITS FACE**

**A.     The Applicable Standard in Reviewing a Rule 12(b)(6) Motion to Dismiss**

To survive a motion to dismiss, a federal complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citation omitted). The U.S. Supreme Court clarified this standard in Ashcroft v. Iqbal, 556 U.S. 662 (2009), stating that a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

This standard must be read together with the familiar admonition that courts may neither "'assume that the [plaintiff] can prove facts that [he] has not alleged,'" Elec. Comm. Corp. v. Toshiba Am. Consumer Prods., Inc., 129 F.3d 240, 243 (2d Cir. 1997) (quoting Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983)) (alteration in original), nor "accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (citation omitted); see also Coleman v. Brokersxpress, LLC, 375 Fed. App'x 136, 137 (2d Cir. 2010) ("Given the absence of specific factual allegations, the complaint does not support the inference that defendants are liable for the misconduct alleged." (emphasis added)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the [...] defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. [...] Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). The ultimate determination of whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (quoting Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007)).

**B.      Age and Gender Discrimination Claims**

"To establish a prima facie case of age discrimination under the ADEA or gender discrimination under Title VII, a plaintiff must demonstrate the following: (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009). Plaintiff cannot demonstrate that she was subject to an adverse employment action, nor has she alleged facts to create a plausible inference that any actions taken with respect to her employment were motivated by discriminatory animus, and accordingly her claims for age and gender discrimination must fail.

**1.     Plaintiff Has Not Suffered an Adverse Employment Action**

For the purposes of establishing a prima facie claim of discrimination under federal law, an adverse employment action exists when a plaintiff has suffered a materially adverse change in the terms and conditions of employment.  Galabaya v. New York City Board of Education, 202 F. 3d 636, 640 (2d Cir. 2002).  Thus, it is well settled that:

> Everyday workplace grievances, disappointments, and setbacks do not constitute adverse employment action within the meaning of Title VII [...] [i]nstead, an actionable adverse employment action is 'a materially significant disadvantage with respect to the terms of [plaintiff's] employment [...], such as termination of employment, a demotion [...] a less distinguished title, a material loss of benefits, significantly diminished material responsibilities [...].

La Grande v. Decrescente Distributing Co, Inc., 2010 U.S. App. Lexis 5925, **9, 10 (2d Cir. 2010).

Here, plaintiff cannot make out a claim for discrimination under either the ADEA or Title VII, as even read in a light most favorable to the plaintiff, the facts alleged in the Complaint do not show that plaintiff suffered an adverse employment action.  Specifically, plaintiff has complained of the following actions that she alleges are adverse: placing unwarranted disciplinary letters in her file (Complaint at ¶¶ 20, 26, 28); issuing unwarranted Unsatisfactory lesson observations and a U-rating for the 2012-2013 school year (Complaint at ¶¶ 17, 26); falsely reporting her to OSI for disciplinary investigations (Complaint at ¶ 26); publicly humiliating plaintiff in front of her students and fellow faculty members (Complaint at ¶¶ 15, 20); and undermining plaintiff's authority with her students, and threatening her job security (Complaint at ¶¶ 15, 20).  As set forth below, none of these alleged actions constitute adverse employment actions sufficient to state a claim.

First, it is well settled that scrutiny of an employee does not constitute an adverse employment action as a matter of law. Hall v. New York City Department of Transportation, 2010 U.S. Dist. LEXIS 31077, *44-46 (E.D.N.Y. 2010); Dauer v. Verizon Communications, Inc., 613 F. Supp. 2d 446, 461 (S.D.N.Y. 2009). Being subjected to heightened criticism or discipline, such as the disciplinary letters to file here alleged by plaintiff, without any change in employment benefits, does not constitute an adverse employment action. Meder v. City of New York, 2007 U.S. Dist. LEXIS 30874, at *12 (E.D.N.Y. 2007) ("written criticisms [...] even if unjustified [...] are not adverse employment actions"); Lawson v. New York City Bd. of Educ., 2011 U.S. Dist. LEXIS 25202 (S.D.N.Y. Feb. 25, 2011) ("[t]here is no evidence or allegation that [plaintiff] was disciplined as a result of the "write ups," that his pay or promotional opportunities were affected [...] or that the "write ups" played any role in any of decisions concerning the continuation of plaintiff's employment [...] [u]nder these circumstances, the "write ups" do not constitute an adverse employment action.") This is true even where reprimands, criticism or discipline cause an employee to become embarrassed or threatened, as plaintiff here alleges; intangible consequences such as "embarrassment or anxiety" are not materially adverse alterations of employment conditions. Castro v. New York City Bd. of Educ. Personnel Dir., 1998 U.S. Dist. LEXIS 2863 (S.D.N.Y. Mar. 11, 1998).

Moreover, to the extent that plaintiff has alleged that she was falsely reported to the OSI for investigation, accusations of misconduct only constitute an adverse employment action when accompanied by a reduction in salary or a loss of a tangible benefit. See Lewis v. City of Buffalo Police Dep't, 311 Fed. Appx. 417, 421 (2d Cir. N.Y. 2009). Plaintiff has not pleaded or alleged that either having disciplinary letters submitted to her file or being reported to

OSI for investigation affected her wages or tangible benefits in any way, and accordingly neither allegation can constitute an adverse employment action as a matter of law.

Unsatisfactory performance evaluations or reviews, such as the "U" rating plaintiff received for the 2012-2013 school year, have only be held to constitute an adverse employment action when accompanied by an "accompanying tangible harm or consequence." See, e.g., Mabry v. Neighborhood Defender Services, 2011 U.S. Dist. LEXIS 10976, *22, 23 (S.D.N.Y. 2011); Walder v. White Plains Board of Education, 2010 U.S. Dist. LEXIS 100831, *37, 38 (S.D.N.Y. 2010). Plaintiff has plead that that receiving a "U-rating" for the 2012-2013 school year "ha[d] the effect of freezing her salary, per session and summer work opportunities, and other promotional opportunities." Complaint at ¶ 28. However, as a the result of a Settlement Agreement that has resolved the charge brought by plaintiff before PERB, the BOE has agreed to remove the U-rating for 2012-2013, and to revise plaintiff's service history to reflect a satisfactory performance evaluation for that period. See Settlement Agreement, Pischl Dec., Ex. "A" at ¶ 2.

In the Settlement Agreement, the parties stipulated to the following terms and conditions, in pertinent part:

* * *

3. The Department of Education ("Department" or "DOE") agrees to remove six (6) letters to Rose Giordano-Forkan's file, dated June 3, 2013, May 20, 2013, May 10, 2013, May 6, 2013, December 18, 2012 and December 14, 2012.

4. The Department agrees to remove the "U" Overall Evaluation for the Annual Professional Performance Review and Report on Probationary Service of Pedagogical Employee ("Overall Evaluation") for the period from 9/4/2012 to 6/30/2013. Giordano-Forkan's service

> history will be revised to reflect an "S" Overall Evaluation for the period from 9/4/2012 to 6/30/2013.
>
> * * *
>
> 6. The Department of Education represents that, as of February 5, 2014, there is no problem code associated with Giordano-Forkan's employment eligibility status and there is no disciplinary flag in Galaxy.

See Settlement Agreement, Pischl Dec., Ex. "A." In light of the plain terms of agreement, the U-rating has been overturned and withdrawn from plaintiff's record, and the disciplinary letters to her file have been removed. Id. at ¶¶ 3-4, 6. Under similar circumstances, where plaintiffs have successfully reversed or overturned otherwise adverse actions in a parallel proceeding, they subsequently fail to as a matter of law to show an adverse employment sufficient to state a claim for discrimination. See, e.g., Gordon v. N.Y. City Bd. of Educ., 2003 U.S. Dist. LEXIS 934 (S.D.N.Y. Jan. 21, 2003) (plaintiff who grieved her negative rating through her union and succeeded in having it overturned, found not to have suffered adverse employment consequences from the withdrawn evaluation); Amna v Montefiore Med. Ctr., 1999 U.S. App LEXIS 19257 (1999) (plaintiff suffered no adverse employment action on which to base a retaliation claim since, as the result of a settlement agreement made by the parties, she was fully compensated for lost wages and the suspensions were expunged from her record); Powell v Consolidated Edison Co., 2001 U.S. Dist LEXIS 2706, at *8 n. 9 (2001) (where plaintiff's termination was reversed and he was reinstated following a union grievance proceeding, no adverse employment action occurred).

As is plain from the language of the Agreement, any negative employment consequences of the U-rating for 2012-2013 have now been withdrawn from plaintiff's record.

Accordingly, plaintiff has failed as a matter of law to plead a prima facie claim for age or gender discrimination for her failure to show that she suffered an adverse employment action.

### 2. The Complaint Fails to Allege Facts Sufficient to Create a Plausible Inference of Discrimination

Even assuming, _arguendo_, that plaintiff might be able to successfully plead that she suffered an adverse employment action, which she may not, plaintiff has further failed to plead any facts giving rise to any inference of discrimination based on age or sex. To survive a motion to dismiss, a plaintiff must put forth facts from which "discriminatory motivation can be inferred." See Perry v. State Dep't of Labor, 2009 U.S. Dist. LEXIS 74006, at *6-*7 (S.D.N.Y. Aug. 19, 2009) (citation omitted). Moreover, "[t]he plaintiff's claim must offer more than conclusory statements; the complaint must contain factual allegations supporting the plausible inference that the employer discriminated against the plaintiff because of the plaintiff's protected characteristic." Edwards v. New York State Unified Court Sys., No. 12 Civ. 46, 2012 U.S. Dist. LEXIS 172207, at *4 (S.D.N.Y. Nov. 20, 2012).

Here, plaintiff has entirely failed to offer even a single fact giving rise to an inference to age or gender discrimination. The Complaint itself is entirely silent as to plaintiff's age, which is never definitely pleaded. The only mention in the entire complaint of plaintiff's age ("over 40 years old") occurs in plaintiff's enumerated claims for relief, rather than in the Complaint's Statement of Facts. See Complaint at ¶ 40. There is no indication of plaintiff's age when she began her career with the BOE, of her age at the time she began her childcare leave, or of her age when she attempted to return. If indeed plaintiff is indeed over forty years old, it cannot be determined when she became that age, or if she was over forty years old for any portion of the events that she alleges herein.

Similarly, plaintiff's gender is never mentioned once in the statement of facts. See Complaint at ¶¶ 12-31. In alleging that the allegedly discriminatory conduct relates to plaintiff's age or gender, plaintiff "does nothing more than allege the familiar faulty syllogism: something bad happened to me at work; I am (fill in the blank with one or more protected categories); therefore it must have happened because I am (fill in the blank with the applicable protected categories])." House v. Wackenhut Servs., Inc., 10 Civ. 9476 (CM) (FM), 2012 U.S. Dist. LEXIS 130879, 2012 WL 4017334, at * 1 (S.D.N.Y. Aug. 20, 2012). Even liberally construed in plaintiff's favor, the Complaint entirely fails to link the alleged discriminatory conduct to a protected characteristic and therefore does not state a plausible discrimination claim. Where pleadings have similarly failed to sufficient provide a link between the protected characteristic and the alleged discrimination, the Second Circuit has consistently upheld dismissal on Rule 12(b)(6) motions. See Coleman v. brokersXpress, LLC, No. 09-1089-cv, 2009 U.S. Dist. LEXIS 8329 (S.D.N.Y. Feb. 4, 2009), aff'd 2010 U.S. App. LEXIS 8976, at *2 (2d Cir. April 30, 2010) (plaintiff's allegation that "defendants decided to terminate him during one Jewish holiday, Rosh Hashanah, and that he was notified that he had in fact been terminated during another Jewish holiday, Yom Kippur," amounted to no more than the conclusory statements, alleging "little more than that he is Jewish[] and that he was terminated"; plaintiff thus had failed to plead a plausible Title VII claim); see also Pakter v. New York City Dep't of Educ., 2010 U.S. Dist. LEXIS 30388 (S.D.N.Y. Mar. 22, 2010) ("[p]laintiff's mere conclusory allegation that '[d]efendants targeted and harassed [plaintiff] because of his age' [] does not state a plausible entitlement to relief").

## C.     Age and Gender Retaliation Claims

To establish a prima facie case of retaliation under both Title VII and the ADEA, an employee must show: "(1) participation in a protected activity known to the defendant; (2) an

employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. N.Y. 2003). An adverse employment action relative to a retaliation claim is an act "that could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Railway v. White, 543 U.S. 53 (2006).

With the possible exception of a U-rating, which has been subsequently reversed by the Stipulation of Settlement as therefore no longer actionable, the actions plaintiff complains of are not deemed adverse employment actions even under the Burlington standard. Even in the context of a retaliation claim, letters critical of plaintiff's job performance, referring allegations to OSI for investigation, and increased scrutiny does not constitute adverse action. See Deshpande v. Medisys Health Network, Inc., 2010 U.S. Dist. LEXIS 37891, *47-49 (E.D.N.Y. 2010), aff'd 2011 U.S. App. LEXIS 1038 (2d Cir. 2011); Brutus v. Silverseal Corp., 2009 U.S. Dist. LEXIS 112654, *26, 27 (S.D.N.Y. 2009), aff'd 2011 U.S. App LEXIS 18400 (2d Cir. 2011).

Even if plaintiff could be found to have suffered an adverse employment action sufficient to state a cause of action in retaliation, and, assuming further for the purposes of this motion only, that plaintiff's union grievances were protected activity under Title VII and or the ADEA and known to defendants, plaintiff's retaliation claim must still be dismissed for the lack of temporal proximity. In order to establish a causal connection between a protected activity and a retaliatory adverse employment action, a party may rely on direct evidence of retaliatory animus or solely on circumstantial evidence such as the timing of the alleged adverse action in relation to the protected activity. Demoret v. Zegarelli, 361 F. Supp. 2d 193, 202 (S.D.N.Y. 2005), rev'd in part on other grounds, 451 F. 3d 140 (2d Cir. 2006).

In the instant case, plaintiff has not pleaded any direct evidence of retaliatory animus: instead, plaintiff relates the allegedly adverse actions to her filing of union-based grievances and complaints against the administration solely due to timing, because they happened after she made her complaint. See, e.g., Complaint at ¶ 26 ("[i]mmediately after filing that complaint, [...] Principal Jones-Rogers retaliated [...]").

It is well settled that "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." Chamberlain v. Principi, 2007 U.S. App. LEXIS 21829, **6 (2d Cir. 2007); Nicastro v. N.Y.C.D.D.C, 2005 U.S. App. LEXIS 4255, *3 (2d Cir., 2005). The Complaint concedes that the adverse actions began "immediately" after plaintiff "returned to P.S. 29" from her child care leave, see Complaint at ¶ 15, continued throughout her first year of teaching, see id. at ¶ 17-22, and "picked up where she left off" on plaintiff's return to P.S. 29 after her first summer. Id. at ¶ 24. All of these allegations occurred before plaintiff ever filed a claim with SDHR, see id. at ¶ 25, and before plaintiff filed her improper practice charge with PERB. Id. at ¶ 27. Accordingly, there is no temporal inference to support any claim of retaliation, and any charges of retaliation must be dismissed.

## D.   Hostile Work Environment Claim

To state a claim for a hostile work environment in violation of Title VII [or the ADEA], a plaintiff must plead facts that would tend to show that the complained of conduct: "(1) is objectively severe or pervasive — that is, [...] creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex [or age]." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. N.Y. 2007); see also Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003) ("The same standards [used to analyze hostile work environment claims

under Title VII] apply to hostile work environment claims brought under the ADEA"). A hostile work environment claimant must satisfy both objective and subjective elements: "the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive the environment to be abusive." Ferraro v. Kellwood Co., 2004 U.S. Dist. Lexis 23482 *22 (S.D.N.Y. Nov. 18, 2004), aff'd, 440 F.3d 96 (2d Cir. 2006). Hostile work environment claims are evaluated under the totality of circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

Additionally, because federal anti-discrimination statutes are not intended to serve as "general civility codes," Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998), a plaintiff must allege that the hostile work environment was caused *because of* a protected characteristic. Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001). As the Second Circuit has noted:

> Everyone can be characterized by sex, race, ethnicity or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals.

Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002); see also Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 440 (2d Cir. 1999) (same).

Based on these guidelines, plaintiff has failed to plead a hostile work environment claim based upon her age or gender. As discussed, supra, at I.B.2, plaintiff has failed to allege

any facts that would link the conduct she complains of to her age or gender, characteristics that go largely unmentioned in her Complaint. Plaintiff has further failed to offer any evidence of discriminatory animus. As plaintiff thus cannot show that any allegedly severe or pervasive conduct relates in any way to a protected characteristic, plaintiff must fail to state a claim for hostile work environment for this reason alone.

Moreover, even construing the Complaint liberally, the conduct complained of by plaintiff does not include offensive language; it does not include inappropriate or threatening physical conduct; it is not alleged have affected plaintiff's work performance. Cf. Harris, supra, at 510 U.S. at 23. Under the applicable "totality of circumstances" analysis, plaintiff has entirely failed to demonstrate offensive conduct that was sufficiently regular or pervasive to demonstrate a hostile work environment, and her claim must be dismissed.

E.      **First Amendment Retaliation Claim**

In order to establish a prima facie case of First Amendment retaliation pursuant to § 1983, an employee must demonstrate the following elements: (1) she spoke as a citizen on a matter of public concern, and not merely as an employee on a matter of personal interest; (2) she suffered an adverse employment action,[2] and (3) the speech at issue was a substantial or motivating factor for the adverse action. See Johnson v. Ganim, 342 F. 3d 105, 112 (2d Cir 2003).

---

[2] With respect to the second element, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir. 2006) (internal quotations and citation omitted); cf. Burlington, 543 U.S. at 53 (similarly defining adverse employment action in retaliation claim). Accordingly, for the same reasons as discussed with respect to plaintiff's retaliation claims, supra, at I.C, with the possible exception of the U-rating, which has been subsequently reversed, the actions plaintiff complains of do not constitute adverse employment actions, and plaintiff's First Amendment claim would fail on for her failure to show that she suffered an adverse employment action.

Plaintiff's claim under for First Amendment retaliation will fail as she cannot establish that the speech at issue here was protected. In determining the threshold question of whether the speech in question qualifies as protected, the court must determine whether the employee was speaking "as a citizen," or whether she was speaking "instead as an employee upon matters only of a personal interest." See Connick v. Meyers, 461 U.S. 138, 147 (1983). Where employee speech concerns matters of personal interest, "absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Id. "The fundamental question is whether the employee is seeking to vindicate personal interests or to bring to light 'a matter of political, social, or other concern to the community.'" Rao v. New York City Health and Hosp. Corp., 905 F. Supp. 1236, 1243 (S.D.N.Y. 1995) (quoting Connick, supra, 461 U.S. at 146-148). "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir. 1999) (citing Connick v. Myers, supra, 461 U.S. at 147-48, and n.7). A First Amendment claim fails where the employee's complaints "were motivated by and dealt with her individual employment situation." Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 143 (2d Cir. 1993).

Accepting all of plaintiff's allegations as true for the purposes of this motion only, it is clear that plaintiff did not engage in "protected speech" by speaking as a citizen on a matter of public concern by "filing an improper practice charge with [PERB] as well as various union-based grievances and special complaints against her school administration and the [BOE]." See

Complaint at ¶ 34. Instead, plaintiff's speech was personal in nature and dealt with her own individual employment situation, rather than issues of public concern.

Plaintiff alleges that she was retaliated against for "fil[ing] a discrimination charge with the [SDHR] against her school principal and administration[,] claiming age and gender discrimination," Complaint at ¶ 25, and, subsequently, for later filing "a supplemental SDHR complaint *for retaliation by the school administration against her* based on [...] new retaliatory events, as well as an improper practice charge with [PERB] *for retaliating against her for her union activities and filing grievances against the Principal.*" Complaint at ¶ 27 (emphasis added). As plead in her Complaint, these activities plainly relate to plaintiff's *personal* employment situation: namely, her allegations that the administration was treating her with hostility, and her own individual response to this treatment.

As to plaintiff's alleged "union activities," the Complaint describes two meetings held at the offices of her union, the UFT. Complaint at ¶¶ 16, 21. The first meeting, held on or about January 11, 2012, "address[ed] Principal Jones-Rogers' mistreatment of [p]laintiff." Id. at ¶ 16. The second, held on or about April 21, 2012, was allegedly convened regarding "Principal Jones-Rogers' hostile behavior towards [p]laintiff." Id. at ¶ 21. Again, from the plain language of the Complaint, both of these meetings addressed plaintiff's concern for her own individual treatment by Principal Jones-Rogers and the administration at P.S. 29. Similarly, the Complaint explicitly describes only one grievance filed by plaintiff, alleging that plaintiff "grieved that she should be placed on an alternative assessment system instead of a formal observation system, as is her contractual right because she received a [s]atisfactory end of the year rating for the 2011-12 school year." Complaint at ¶ 24. This grievance explicitly addresses plaintiff's individual rights under the collective bargaining agreement, and plaintiff's complaint

that she was being singled out for unfair treatment. See, e.g., Halstead v. New York City Transit Authority, 2002 U.S. Dist. LEXIS 26963, *46, 47 (S.D.N.Y. 2002) aff'd 2003 U.S. App. LEXIS 21446 (2d Cir. 2003) (plaintiff's discrimination complaint to an administrative agency did not address a matter of public concern because the complaint only addressed the discriminatory treatment towards plaintiff).

Here, plaintiff's Complaint does not allege a single instance of discrimination or retaliation to an employee other than herself; nor does plaintiff complain of any policy sanctioned by the administration or any pattern of discriminatory treatment amongst her coworkers. See, e.g., Roemer v. Bd. of Educ., No. 01-CV-1105, 2002 U.S. Dist. LEXIS 27118, at *33-34 (E.D.N.Y. Dec. 30, 2002) ("plaintiff's grievance concerned the manner in which his supervisors were evaluating his own teaching methods and imposing discipline upon him, which were matters of private rather than public concern."); cf. Domenech v. City of New York, 919 F. Supp. 702, 707 (S.D.N.Y. 1996) (speech addressed matter of public concern where plaintiff complained of sex discrimination against her and three female co-workers); Scott v. Goodman, 961 F. Supp. 424, 434-436 (E.D.N.Y. 1997) (plaintiff's claim of retaliation for representing workers against management and participating in union activities implicated matter of public concern). Indeed, the Complaint mentions plaintiff's coworkers only obliquely, to assert that "[p]laintiff was […] held to a higher standard than her colleagues, as many of her colleagues engaged in the same behavior alleged in the [March 1, 2012 disciplinary letter] […] and never received any disciplinary action." Complaint at ¶ 20. In contrast to the plainly individualized concerns articulated by the Complaint, matters of public concern include situations where "[a] plaintiff 'wanted to debate issues of sex discrimination,' [where] her suit sought relief against pervasive or systemic misconduct by a public agency or public officials,' or [where] her suit was

'part of an overall effort [...] to correct allegedly unlawful practices or bring them to the public attention.'" <u>Saulpaugh v. Monroe Community Hosp.</u>, 4 F.3d 134, 143 (2d Cir. 1993), (<u>quoting</u> <u>Yatvin v. Madison Metro. Sch. Dist.</u>, 840 F.2d 412, 420 (7th Cir. 1988)).

As pleaded, the Complaint thus makes plain that the speech that forms the basis for her First Amendment claim exclusively concerns her own treatment by Principal Jones-Rogers and the administration at P.S. 29, a private concern. Accordingly, plaintiff's speech was not afforded protection under the First Amendment, and she has thus failed to state a plausible First Amendment retaliation claim pursuant to § 1983.

## POINT II

### PLAINTIFF'S CLAIMS UNDER TITLE VII AND THE ADEA MUST BE DISMISSED AS AGAINST ALL INDIVIDUALLY-NAMED DEFENDANTS

To the extent that plaintiff asserts Title VII and the ADEA claims against the individually named defendants, individual defendants cannot be held individually liable under either of these statutes. <u>See</u> <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1314, 1317 (2d Cir. 1995), <u>abrogated on other grounds</u> <u>Burlington</u>, <u>supra</u>, 524 U.S. at 742 (Title VII claims); <u>see also</u> <u>Parker v. Metropolitan Transp. Auth.</u>, 97 F. Supp. 2d 437, 452 (S.D.N.Y. 2000) (ADEA claims). Accordingly, plaintiff's claims under Title VII and the ADEA as against Jennifer Jones-Rogers, Christine Milton, and Scott Wolfson, in their individual capacities, must be dismissed.

## POINT III

**PLAINTIFF'S CLAIMS FOR VIOLATIONS OF THE FIRST AMENDMENT PURSUANT TO § 1983 AGAINST THE BOE MUST BE DISMISSED BECAUSE THERE IS NO OFFICIAL POLICY OR CUSTOM ALLEGED TO BE THE CAUSE OF THE CHALLENGED VIOLATIONS**

A claim asserting a deprivation of a constitutional right made against a municipal entity such as the BOE "must [...] allege the deprivation was caused by a custom or policy of the municipality, and may not simply be based on a theory of respondeat superior." Oparaji v. City of New York, 152 F.3d 920 (2d Cir. 1998) (citing Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 694 (1978)). Under Monell, a municipality can only be held liable if its "policy or custom, whether by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury [...]." Monell, 436 U.S. at 694. Thus, to survive a motion to dismiss, a complaint must "make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." Missel v. Cnty of Monroe, 351 Fed. Appx. 543, 545 (2d Cir. 2009). Generally, "proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." Oklahoma City v. Tuttle, 471 U.S. 808, 823-824 (U.S. 1985). The "mere assertion" that a municipality has such a policy is insufficient to establish Monell liability. Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) (holding that "the mere assertion [...] that a municipality has [...] a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference").

Here, plaintiff has entirely failed to plead or allege that any custom or policy of the BOE was responsible for the complained-of conduct. Moreover, even if plaintiff's allegations were taken as true, and defendants rated plaintiff with a U-rating in retaliation for her having filed complaints of discrimination, this instance of unconstitutional activity would be legally insufficient to impose liability against the BOE, as plaintiff has failed to alleged that any specific municipal policy was responsible. See Tuttle, supra, at 823-824. Accordingly, plaintiff's claims pursuant to § 1983 for violations of the First Amendment should be dismissed against the BOE and its officers in their official capacities.

### POINT IV

### CAUSES OF ACTION ALLEGING LIABILITY AGAINST THE CITY OF NEW YORK MUST BE DISMISSED IN THEIR ENTIRETY AS AGAINST AN IMPROPER PARTY

Finally, the City of New York is a separate and distinct legal entity from the BOE, and, accordingly, is not a proper party to this action. New York courts have long held that the "[the BOE] is not a department of the [C]ity of New York," but rather a separate and distinct legal entity. See Perez v. City of New York, 41 A.D.3d 378, 379 (1st Dep't 2007), appeal denied, 10 N.Y.3d 708 (2008) ("While the 2002 amendments to the [N.Y. Education Law] providing for greater mayoral control significantly limited the power of the [BOE] […] , the City and the [BOE] remain separate legal entities."). The City is not liable in suit for the actions of the BOE. See Linder v. City of New York, 263 F. Supp. 2d 585, 590 (E.D.N.Y. 2003).

At all relevant times, plaintiff has been employed by the BOE, not the City of New York. See Complaint at ¶ 12. Moreover, the Complaint asserts claims against employees and officers of the BOE, not the City of New York. See Complaint at ¶¶ 7-10. To the extent that

the plaintiff has alleged claims as against the City of New York, the City has no liability for such claims.  Accordingly, any claims as against the City must be dismissed.

**CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Court grant their motion to dismiss, that judgment be entered for defendants, and granting such other and further relief as this Court deems just and proper.

Dated:      New York, New York
              February 25, 2014

**ZACHARY W. CARTER**
Corporation Counsel of the
  City of New York
Attorney for Defendants
100 Church Street, Rm 2-142
New York, New York  10007-2601
(212) 356-2429

By: _____
         Stephen P. Pischl
        Assistant Corporation Counsel

Jane Andersen
Stephen P. Pischl,
  Of Counsel.