Docket No. 13 Civ. 6950 (GBD)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROSE GIORDANO-FORKAN,

                              Plaintiff,

-v-

CITY OF NEW YORK; NEW YORK CITY DEPARTMENT OF EDUCATION; DENNIS WALCOTT, CHANCELLOR OF NEW YORK CITY DEPARTMENT OF EDUCATION; JENNIFER JONES-ROGERS, PRINCIPAL OF P.S. 29, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; CHRISTINE MILTON, ASSISTANT PRINCIPAL OF P.S. 29, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; SCOTT WOLFSON, ASSISTANT PRINCIPAL OF P.S. 29, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY,

                              Defendants.

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*GLASS KRAKOWER LLP*
100 Church Street, 8th Floor
New York, NY 10007
(212) 537-6859
bg@glasskrakower.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT ............................................................................................................................. 7

   A.  Plaintiff has stated Plausible Claims for Age and Gender Discrimination ............................ 7

   B.  Plaintiff has stated Plausible Claims for Age and Gender Retaliation .................................. 11

CONCLUSION ........................................................................................................................ 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ROSE GIORDANO-FORKAN,

                                  Plaintiff,

-against-

CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF EDUCATION; DENNIS
WALCOTT, CHANCELLOR OF NEW YORK
CITY DEPARTMENT OF EDUCATION;
JENNIFER JONES-ROGERS, PRINCIPAL OF
P.S. 29, IN HER OFFICIAL AND INDIVIDUAL
CAPACITY; CHRISTINE MILTON, ASSISTANT
PRINCIPAL OF P.S. 29, IN HER OFFICIAL AND
INDIVIDUAL CAPACITY; SCOTT WOLFSON,
ASSISTANT PRINCIPAL OF P.S. 29, IN HIS
OFFICIAL AND INDIVIDUAL CAPACITY,

                                  13 CV 06950 (GBD)(JC)

                                Defendants.
------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS

### PRELIMINARY STATEMENT

Plaintiff ROSE GIORDANO-FORKAN, by her attorneys, GLASS KRAKOWER LLP, submits this memorandum of law in response to Defendants' motion to dismiss the complaint. Defendants' motion should be denied and this matter should be promptly scheduled for discovery and eventual trial.

Plaintiff, an elementary teacher employed by the New York City Department of Education ("DOE") at Public School 29 ("P.S. 29") since 2000, brings this action seeking

monetary and equitable relief based upon Defendants' discrimination and retaliation pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* (hereinafter "ADEA"), Title VII of the Civil Rights Act of 1964 due to gender discrimination, and the First Amendment pursuant to 42 U.S.C. Section 1983.

Plaintiff brings this action as a result of ongoing mistreatment and retaliatory actions taken against her since returning to P.S. 29 after an eight-year childcare leave of absence, and thereafter being discriminated against, being subject to a hostile work environment, and retaliated against with an unsatisfactory end of year rating, negative job performance observations, and unjustified disciplinary letters for filing complaints of discrimination against defendants with the New York State Division of Human Rights and New York State Public Employment Relations Board, and for engaging in various concerted union activities within the school.

Defendants' motion to dismiss the complaint should be summarily denied because Plaintiff has established legitimate and plausible age and gender discrimination claims, and Plaintiff has suffered materially adverse employment actions that occurred under circumstances giving rise to an inference of discrimination and retaliation which create genuine disputed issues of fact for discovery and trial.

## STATEMENT OF FACTS

Plaintiff has been a teacher with the DOE since 1995. *See* Complaint ¶ "12." Forty-two years of age, Plaintiff has taught for the majority of her career at P.S. 29 in Queens, New York. *See* Complaint ¶¶ "12," "13," "14," and "40." Plaintiff currently is employed as a full-time elementary school teacher in her 11th year of teaching. *See* Complaint ¶ "14."

While her career with Defendant NYCDOE began in 1995, Plaintiff began working full-time at P.S. 29 in 2000. Plaintiff received all Satisfactory and positive observations at P.S. 29 until taking a childcare leave in 2003, at which point she worked part-time on a satisfactory basis at P.S. 29 until 2005, when she took full childcare leave from teaching. *See* Complaint ¶ "13."

In March 2011, Plaintiff intended to return to P.S. 29 as a full-time elementary school teacher. *See* Complaint ¶ "14." Though Defendant Jennifer Jones-Rogers told Plaintiff that there was no place for her at P.S. 29, after contacting the NYCDOE's central human resources department, Defendant Jones-Rogers was forced to back off and Plaintiff effectuated her return to the school. *See id.*

Immediately upon Plaintiff's return to the school in September 2011, Plaintiff was subjected to an extremely hostile work environment by the school principal Jones-Rogers. *See* Complaint ¶ "15." Not only did Principal Jones-Rogers make inappropriate comments about Plaintiff in front of faculty members and students, but she also issued Plaintiff unwarranted disciplinary letters, counseling memoranda, negative informal observations, and logs of assistance throughout the course of the 2011-12 school year. *See id.* Additionally, Defendant Jones-Rogers imposed numerous requirements on Plaintiff that no other similarly situated younger teachers would have to do, such as additional paperwork and formal observations. *See id.*

On or about January 11, 2012, a meeting was held at the District 25 office, during which all parties involved agreed, including Defendant Jones-Rogers, that Defendant Jones-Rogers would cease and desist from her harassing treatment of Plaintiff. *See* Complaint ¶ "16." Also agreed upon during this meeting was that Defendant Jones-Rogers would cease acting as Plaintiff's direct supervisor. *See id.*

3

Following this meeting, Defendant Assistant Principal Christine Milton became hostile and dismissive towards Plaintiff, and eventually issued Plaintiff the first Unsatisfactory observation of her career in March 2012. *See* Complaint ¶ "17." This observation should never have taken place, as Plaintiff had elected an alternative assessment system—a teacher's right under the collective bargaining agreement—in lieu of the formal assessment system as her evaluation tool. *See* Complaint ¶ "19." Nevertheless, Defendant Jones-Rogers notified Plaintiff, in a letter dated March 7, 2012, that she would be requiring Plaintiff to be evaluated according to the formal assessment system. *See id.* Furthermore, the observation report issued to Plaintiff contains factually inaccurate statements, fabricated by the administration, and was completely unwarranted. Complaint ¶ "18."

Plaintiff experienced other forms of harassment, discrimination and retaliatory treatment during March 2012. On or about March 1, 2012, Defendant Jones-Rogers issued Plaintiff a disciplinary letter with false allegations of "poor judgment" that was based on conduct—which she denied doing—that other similarly situated younger teachers had engaged in without reprimand. *See* Complaint ¶ "20." Defendant Jones-Rogers also forbade Plaintiff from speaking to parents, and publicly humiliated Plaintiff by scolding her over the loudspeaker. *See id.*

A second meeting was held regarding Defendant Jones-Rogers' treatment of Plaintiff on or about April 3, 2012. *See* Complaint ¶ "21." At this meeting, it was agreed that Plaintiff would receive a Satisfactory end of the year rating for the 2011-12 school year in exchange for transferring to a different school for the following school year. *See id.* However, by May 24, 2012, when Plaintiff had not yet been able to secure a transfer to another school, Defendant Jones-Rogers threatened Plaintiff that she would be receiving an Unsatisfactory end of the year rating If she was unsuccessful in obtaining a transfer to another school. *See* Complaint ¶ "22."

Ultimately, however, though Plaintiff returned to P.S. 29 for the 2012-13 school year, she received a Satisfactory end of the year rating for the 2011-12 school year. *See* Complaint ¶ "24."

Upon her return to P.S. 29 in August 2012, Plaintiff learned that she would once again be formally observed. *See* Complaint ¶ "24." Defendant Jones-Rogers also made comments, on or about August 16, 2012, implying that Plaintiff would be receiving an Unsatisfactory end of the year rating ("U rating") for the 2012-13 school year—before the school year had even started. *See id.*

On or about October 26, 2012, Plaintiff filed a discrimination charge with the New York State Division of Human Rights ("SDHR") against Defendant Jones-Rogers and the other Assistant Principal administrators at P.S. 29. *See* Complaint ¶ "25." Immediately after Plaintiff filed this complaint, Defendant Jones-Rogers and her Assistant Principals engaged in a number of retaliatory actions in November 2012. Specifically, Plaintiff received several unwarranted Unsatisfactory observations and disciplinary letters, became the subject of an investigation by the NYCDOE Office of Special Investigations initiated by her school principal Jones-Rogers (for not reporting Jones-Rogers' own misconduct towards Plaintiff's students!), and received an unwarranted Log of Assistance. *See* Complaint ¶ "26."

Based on these new retaliatory events, in December 2012, Plaintiff filed a supplemental NYSDHR complaint for retaliation, as well as an improper practice charge with the New York State Public Relations Board ("PERB"). *See* Complaint ¶ "27."

Plaintiff continued to face further retaliation for her filings and complaints during the Spring of 2013. Specifically, she received additional, unwarranted negative observations, disciplinary letters, and Logs of Assistance. *See* Complaint ¶ "28." This culminated with Defendant Jones-Rogers issuing Plaintiff her first ever Unsatisfactory annual rating for the 2012-

## ARGUMENT

## PLAINTIFF HAS STATED VALID CAUSES OF ACTION PURSUANT TO § 1983, TITLE VII, AND THE ADEA

### A. Plaintiff Has Stated Plausible Claims for Age and Gender Discrimination

In order to establish a *prima facie* case of age and gender discrimination under the ADEA and Title VII, 42 U.S.C. § 1983, the SHRL and the CHRL, plaintiffs must show that they (1) fall within the protected age group; (2) they were performing their duties satisfactorily; (3) they were subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination. *See Graham Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 Fed. Appx. 413, 2011 U.S. App. LEXIS 4626 at *5. Though a plaintiff bears the burden of producing evidence sufficient to support a prima facie case of discrimination, such evidence need be no more than "minimal" or "de minimis." *See, e.g., Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d. Cir. 2005). Additionally, a number of courts have now held that adverse employment actions need not be material in order to violate the NYCHRL and that any non-trivial discriminatory act is actionable. *See Williams v. Regus Mgmt. Group, LLC*, 836 F. Supp. 2d 159, 172, 2011 U.S. Dist. LEXIS 140287, at *30 (S.D.N.Y. Dec. 6, 2011); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).

Defendants do not contest that Plaintiff was within the protected age group and qualified for the position, but challenge Plaintiff's claim that she suffered an adverse employment action that occurred under circumstances giving rise to an inference of discrimination. As will be shown, Plaintiff clearly has met her burden for both these elements to survive a motion to dismiss as this early stage of this litigation.

Complaint ¶ "15." She was not allowed to be evaluated under the alternative assessment system, in violation of her contract and different from other, younger teachers at her school. *See* Complaint ¶ "19" and "24." And she received disciplinary letters for same conduct others engaged in, yet others did not receive such letters. *See* Complaint ¶ "20." Clearly, Plaintiff was treated differently than other, similarly situated teachers in her school. There is an issue of fact as to whether these teachers were younger than Plaintiff and received more preferential treatment, and as such it entirely premature for the complaint to be dismissed.

**B. Plaintiff Has Stated Plausible Claims For Age and Gender Retaliation**

For a plaintiff to state a claim for retaliation under the ADEA and Title VII, she must allege that (1) she engaged in a protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010). To qualify as an adverse employment action for a retaliation claim, the act must be one "that could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway v. White*, 543 U.S. 53 (2006).

Defendants contend, incorrectly, that the actions Plaintiff has complained of—other than the "possible exception of a U-rating"—do not qualify as adverse employment actions for purposes of a retaliation claim. *See* Defendants' Memorandum of Law at 14. The "standard for an adverse employment action in retaliation claims is considerably broader than the standard for discrimination claims under Title VII." *Vaughn v. City of New York*, No. 06-CV-6547, 2010 WL 2076926, at *14 (E.D.N.Y. May 24, 2010). Further, the Second Circuit has found that "negative

evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to [a] classroom on [the] fifth floor which aggravated teacher's physical disabilities" may qualify as adverse employment actions for purposes of a retaliation claim. *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 226 (2d Cir. 2006) (internal quotations and citations omitted).

Clearly, Plaintiff's U annual rating qualifies as an adverse employment action. If the U rating qualifies as such for the purposes of a discrimination claim, it does for a retaliation claim. Under *Zelnik*, the numerous unwarranted disciplinary letters that Plaintiff received also qualifies as adverse employment actions, as well as the false investigation launched against her with OSI. They clearly have a chilling effect on Plaintiff that meets the *Burlington* standard for adverse employment actions.

Defendants further argue that Plaintiff's retaliation claims must be dismissed for the lack of temporal proximity. In support of their argument, they argue that because Plaintiff experienced adverse job actions prior to filing her claim with SDHR and improper practice charge with PERB, there can be no temporal inference. Defendants err in their assumption that Plaintiff's SDHR claim and PERB improper practice charge were her first protected activity. Though Plaintiff experienced an extremely hostile work environment immediately upon her return to P.S. 29, *see* Complaint ¶ "15," she did not receive her first adverse employment action—the first Unsatisfactory observation of her career—until March 2012, less than two months after the January 11, 2012 meeting at her District 25 office. *See* Complaint ¶ "17."

Assuming, *arguendo*, that Plaintiff's first protected activity was her October 26, 2012 SDHR complaint, she still has plead a valid claim of retaliation. Following the filing of

Plaintiff's SDHR complaint and PERB improper practice charge, the scrutiny of Plaintiff intensified, as Plaintiff received unwarranted negative observations, disciplinary letters, and most importantly, her first ever U annual evaluation. *See* Complaint ¶ "28." Prior to Plaintiff filing her SDHR complaint and PERB improper practice charge, she had never received an Unsatisfactory evaluation, and the majority of her unwarranted disciplinary letters, unsatisfactory observations, and other adverse employment actions taken against her occurred following the filing of her SDHR complaint and PERB charge.

Accordingly, Plaintiff has more than adequately stated a plausible claim for retaliation at this early stage of the litigation, and it is entirely premature for the court to dismiss Plaintiff's retaliation claims.

## CONCLUSION

For the foregoing reasons Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss the complaint, order the case to proceed to discovery and/or trial on all material factual issues, and grant such other and further relief as the Court may deem just and proper. In the alternative, should the Court find any particular claim is not adequately pled, Plaintiff respectfully requests leave to amend the complaint to provide sufficient facts on which relief can be granted.

Dated: New York, New York
       May 15, 2014

                        GLASS KRAKOWER LLP
                        Attorneys for Plaintiff
                        100 Church Street, 8th Floor
                        New York, NY 10007
                        (212) 537-6859

                By:       s/
                        BRYAN D. GLASS, ESQ.