USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: OCT 17 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------- x
ROSE GIORDANO-FORKAN,

         Plaintiff,

 -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION; DENNIS WALCOTT,
CHANCELLOR OF NEW YORK CITY
DEPARTMENT OF EDUCATION; JENNIFER
JONES-ROGERS, PRINCIPAL OF P.S. 29, IN
HER OFFICIAL CAPACITY; CHRISTINE
MILTON, ASSISTANT PRINCIPAL OF P.S. 29,
IN HER OFFICIAL CAPACITY; SCOTT
WOLFSON, ASSISTANT PRINCIPAL OF P.S. 29,
IN HIS OFFICIAL CAPACITY,

         Defendants.
---------------------------------- x

MEMORANDUM DECISION
AND ORDER

13 Civ. 06950 (GBD)

GEORGE B. DANIELS, United States District Judge:

  Plaintiff Rose Giordano-Forkan brought this action alleging age and gender discrimination in violation of the First Amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964 ("Title VII"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"); the New York State Human Rights Law, Executive Law § 296 *et seq.*; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.* (Complaint, ECF No. 1.) Defendants moved to dismiss all claims. (Motion to Dismiss, ECF No. 11.)

  For the reasons articulated at the June 18, 2014 oral argument, this Court granted Defendants' motion to dismiss and gave Plaintiff permission to seek leave to amend her Complaint. (*See* Order, ECF No. 24.) Plaintiff requested leave to amend by letter and provided this Court with a Proposed Amended Complaint. (Letter from Plaintiff's Counsel, Bryan D. Glass, July 17, 2014.)

The Proposed Amended Complaint alleges only a claim of retaliation under the ADEA and Title VII. Defendants oppose Plaintiff's request and argue that leave to amend should be denied as futile. (Letter from Defense Counsel, Stephen Pischl, Assistant Corporation Counsel, dated July 22, 2014.) Plaintiff's request for leave to amend the Complaint to assert only a claim of retaliation under Title VII and the ADEA against the Defendants in their official capacity is GRANTED.

## LEGAL STANDARD

Courts should freely permit plaintiffs leave to amend when justice so requires. Fed. R. Civ. P. 15(a)(2). But by its terms, this rule is not absolute. The Supreme Court long ago identified reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." that justify denying a movant leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave to file an amended pleading should be denied when the amendment would be futile. *Absolute Activist Value Master Fund, Ltd. v. Ficeto*, 677 F.3d 60, 71 (2d Cir. 2012) (citing *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 127 (2d Cir. 2007)). A proposed amendment is futile when it "could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard demands more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Rather, to state a facially plausible claim, *Iqbal* requires a

2

party to "plead[] factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* For the purposes of a 12(b)(6) motion, Plaintiff's well-pleaded facts are assumed to be true and all reasonable inferences therefrom are construed in the light most favorable to Plaintiff, the non-moving party. *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (citing *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007)).

## BACKGROUND

Plaintiff was a teacher at Public School 29 ("P.S. 29"). Beginning in March 2011, the principal of P.S. 29, Defendant Jones-Rogers, and other members of the school's administration allegedly treated Plaintiff unfairly. (Am. Compl. ¶¶ 15-16, 20, 24.) In an effort to address the alleged mistreatment, Plaintiff met with her union on two occasions. (*Id.* ¶¶ 16, 21.) Plaintiff did not see a change in the behavior of the school's administration, and on or about October 26, 2012, she filed a discrimination complaint with the New York State Division of Human Rights ("SDHR") against Defendant Jones-Rogers and others claiming age and gender discrimination. (*Id.* ¶ 25.) Plaintiff's proposed remaining claim centers on the allegation that after—and as a result of—filing that SDHR complaint, she was subjected to a series of negative actions by school administrators, including receipt of false "unsatisfactory" ratings during several observations and a disciplinary letter. (*Id.* ¶¶ 26-27.) In addition, Defendant Jones-Rogers allegedly reported Plaintiff to the Office of Special Investigation ("OSI") almost immediately after Plaintiff filed her SDHR complaint. (*Id.* ¶¶ 26-27, 34.) Defendant Jones-Rogers allegedly prompted the OSI investigation because Plaintiff failed to report an incident of verbal abuse involving one of her students that occurred eight months prior. Notably, another teacher present for the incident was

never reported.[1] (*Id.* ¶ 27.) Plaintiff filed a supplemental SDHR complaint in December 2012, as well as an improper practice charge with the New York State Public Employment Relations Board, based on these alleged retaliatory events. (*Id.* ¶ 28.) In spring of 2013, Plaintiff received further negative ratings and disciplinary letters, which culminated in an "Unsatisfactory" evaluation ("U-Rating") for the 2012-2013 school year. (*Id.* ¶ 29.) This rating had "the effect of freezing her salary, denying her the opportunity to do per session and summer work opportunities, and prevent[ing] her from pursuing promotional activities." (*Id.*) In February 2014, Plaintiff's 2012-2013 U-Rating was reversed pursuant to a settlement agreement that resolved the matter before the New York State Public Employment Relations Board. (*Id.* ¶ 38.)

To survive a motion to dismiss, a plaintiff alleging a claim of retaliation must show that: "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). Defendants argue that Plaintiff is unable to establish elements three and four. (Letter from Defense Counsel, Stephen Pischl, Assistant Corporation Counsel, dated July 22, 2014.)

## Adverse Employment Action

To constitute an adverse employment action for purposes of a retaliation claim, the action must be "materially adverse" such that it could "dissuade a reasonable worker from making or supporting a

---

[1] The Proposed Amended Complaint explains that in March 2012, Defendant Jones-Rogers verbally abused a student in the presence of Plaintiff and another teacher. Thus, accepting Plaintiff's recitation of the facts as true, Defendant Jones-Rogers reported Plaintiff—and not the other teacher—to the OSI for failing to report Defendant Jones-Rogers's own abusive conduct. She allegedly did this a full eight months after the alleged verbal abuse, but very shortly after Plaintiff's SDHR complaint, suggesting that her intentions were to retaliate against and punish Plaintiff. (Am. Compl. ¶¶ 26-27, 34.)

4

charge of discrimination." *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 57 (2006) (internal quotation marks omitted). The alleged retaliatory behavior "need[s] to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (citation omitted); *see also Tepperwien v. Entergy Nuclear Operations*, 663 F.3d 556, 568 (2d Cir. 2011) (citing *Hicks*, 593 F.3d at 165) ("Alleged acts of retaliation must be evaluated both separately and in the aggregate, as even trivial acts may take on greater significance when they are viewed as part of a larger course of conduct.").

Plaintiff alleges that following her initial SDHR complaint, Defendants subjected her to a series of actions that were used to justify her U-Rating. Defendants contend that the eventual re-designation of Plaintiff's U-Rating to a rating of "Satisfactory" pursuant to the settlement agreement precludes reliance on the U-Rating as an adverse action. (Letter from Defense Counsel Stephen Pischl, Assistant Corporation Counsel, dated July 22, 2014.) An action resulting in the denial of a pay raise can qualify as an adverse employment action. *See Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001), *as amended* (Apr. 20, 2001) ("Nor can there be any doubt that [Plaintiff] has adequately alleged adverse employment actions against her, in the denied pay raises, in her termination, and also in [the] harassing behavior."); *see also Nidzon v. Konica Minolta Bus. Solutions, USA, Inc.*, 752 F. Supp. 2d 336, 349 (S.D.N.Y. 2010) (citations omitted) ("Under the law of the Second Circuit, the denial of a salary increase is also sufficiently material to constitute an adverse employment action.").

However, courts differ as to whether a subsequently overturned adverse action supports a retaliation claim. *Compare Burlington*, 548 U.S. at 73 ("[A]n indefinite suspension without pay could well act as a deterrent, even if the suspended employee eventually received backpay."), *with Washington v. Cnty. of Rockland*, 211 F. Supp. 2d 507, 514 (S.D.N.Y. 2002) (finding disciplinary charges and formal hearings against plaintiffs insufficient to constitute an adverse employment action

5

where charges against plaintiffs were dismissed and loss of pay was reinstated), *aff'd*, 373 F.3d 310 (2d Cir. 2004), *and Amna v. Montefiore Med. Ctr.*, No. 98-9088, 1999 WL 627626, at *1 (2d Cir. Aug. 6, 1999) (finding no adverse employment action where a settlement agreement between the parties fully compensated plaintiff for lost wages and expunged her suspensions from her record).

Plaintiff has pleaded facts sufficient to demonstrate that she suffered an adverse employment action because, following her receipt of the U-Rating in June 2013, her salary increase was automatically frozen.[2] (Am. Compl. ¶ 36.) Despite being reimbursed, Plaintiff's loss of the use of those wages constitutes an adverse employment action. *See Burlington*, 548 U.S. at 73; *cf. Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223-24 (2d Cir. 2001) (holding that a week without pay would be sufficient to support a jury's finding that she suffered an adverse employment action in the Americans with Disabilities Act context, despite subsequent reimbursement).

Even if the U-Rating and its immediate consequences could not sustain the present claim, the sum of the alleged retaliatory actions taken by the school administration could amount to an adverse employment action. The Second Circuit has repeatedly stated that accusations of retaliation can, and often should, be evaluated in the aggregate. *See, e.g., Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 25 (2d Cir. 2014) (citation omitted). Plaintiff has alleged a series of undue interferences with her employment responsibilities, harassment by administrators, and multiple false evaluations, which together were used to justify her U-Rating. These allegations, if proven true, extend beyond the

---

[2] Plaintiff argues that the U-Rating "[denied] her the opportunity to do per session and summer work" and that applying to summer and per session work was "futile." (*See* Am. Compl. ¶¶ 29, 36.) However, there is no evidence that Plaintiff applied to and was rejected from any work opportunities. Therefore, Plaintiff's claim that she lost summer and per session work, without more, is too speculative to support her retaliation claim. *See Carmellino v. Dist. 20 of New York City Dep't of Educ.*, 03-CV-5942, 2006 WL 2583019, at *32 (S.D.N.Y. Sept. 6, 2006) (finding that a plaintiff's claim of ADEA retaliation based on lost opportunity for per session work failed as a matter of law where there was "no evidence in the record that [plaintiff] was otherwise eligible for such work, that such work was available, or that [plaintiff] actually applied for and was denied such work").

6

"petty slights" and "minor annoyances" that are part of all employees' experiences at work, and could suggest that Plaintiff's discipline was pretextual and retaliatory in nature. *See Burlington*, 548 U.S. at 68.

**Causation**

Defendants next argue that there is no temporal inference to support Plaintiff's claim of retaliation. The Supreme Court recently held that retaliation claims "require[] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). Thus, "proof that the desire to retaliate was the but-for cause of the challenged employment action" is required. *Id.* at 2528. "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Hicks*, 593 F.3d at 170 (quoting *Gordon v. N.Y. City Bd. Of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). Plaintiff does not cite proof of discriminatory animus. Thus, the question is whether there is sufficient evidence of causation based on the temporal proximity between the protected activity and adverse action.

The Second Circuit has not drawn a bright-line rule regarding when a causal relationship between a protected activity and an allegedly retaliatory act is too attenuated. *Compare Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (finding a "several month[]" gap insufficient under the circumstances), *with Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (finding an eight-month gap sufficient under the circumstances). In lieu of following strict timing guidelines, courts address the factual context of each particular case. *See, e.g., Espinal v. Goord*, 558

7

F.3d 119, 129 (2d Cir. 2009) (citation omitted) (explaining that the absence of a bright-line rule "has allowed our Court to exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases").

At least six months passed between Plaintiff's protected activity and the U-Rating. Plaintiff alleges that the unwarranted punishments she received that were aggregated to justify her U-Rating commenced in response to her October SDHR complaint. (*Id.* § 35 ("This U annual evaluation was entirely based on documentation placed in Plaintiff's file[] *after* she filed her SDHR protected complaint.").)

Defendants argue that Plaintiff's timeline prevents her from meeting the proximity requirement because inferences of retaliation do not arise when the alleged retaliation was gradual and began prior to the protected activity. *Chamberlin v. Principi*, 247 Fed. App'x 251, 254 (2d Cir. 2007) (citing *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)). Although Plaintiff alleges that she was mistreated shortly after her arrival at P.S. 29., (Am. Compl. ¶¶ 15, 17, 20, 24.), she experienced heightened mistreatment because of her SDHR complaint and only those actions post-dating her SDHR complaint gave rise to the adverse U-Rating. (*Id.* ¶¶ 26-29); *see also Gregory*, 243 F.3d at 701 ("Of course, in examining the sufficiency of [Plaintiff's] pleadings of retaliation, we must omit from consideration those episodes of harassment that preceded her protected activity . . . since prior harassment could not have been in retaliation for acts not yet taken.").

Accepting Plaintiff's allegations as true, she has raised facts sufficient to support a claim of retaliation.

## CONCLUSION

Plaintiff's request for leave to amend her Complaint to allege a single claim of retaliation in violation of Title VII and the ADEA against Defendant New York City Department of Education, and Defendants Dennis Walcott, Jennifer Jones-Rogers, Christine Milton, and Scott Wolfson in their official capacities is GRANTED.

Dated: New York, New York
      October 17, 2014

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge