UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

ROSE GIORDANO-FORKAN,

               Plaintiff,

-against-

CITY OF NEW YORK; NEW YORK CITY DEPARTMENT OF EDUCATION; DENNIS WALCOTT, CHANCELLOR OF NEW YORK CITY DEPARTMENT OF EDUCATION; JENNIFER JONES-ROGERS, PRINCIPAL OF P.S. 29, IN HER OFFICIAL AND INDIVIDUAL CAPACITY; CHRISTINE MILTON, ASSISTANT PRINCIPAL OF P.S. 29, IN HER OFFICIAL AND INDIVIDUAL CAPACITY, SCOTT WOLFSON, ASSISTANT PRINCIPAL OF P.S. 29 IN HIS OFFICIAL AND INDIVIDUAL CAPACITY,

               Defendants.

**AMENDED COMPLAINT**

ECF CASE

13 CV 6950 (GBD)

JURY TRIAL DEMANDED

      Plaintiff ROSE GIORDANO-FORKAN, by her attorneys, GLASS KRAKOWER LLP, as and for her Amended Complaint against Defendants, respectfully alleges as follows:

**PRELIMINARY STATEMENT**

      1.    Plaintiff brings this action seeking monetary and equitable relief based upon Defendants' violations of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act (ADEA) as a result of mistreatment and retaliatory actions taken against her as an elementary school teacher employed by Defendants after she filed a New York State Division of Human Rights complaint in October 2012 based on age and gender discrimination, and therefore was retaliated against with, *inter alia*, her first

1

ever unsatisfactory end of year rating and false disciplinary investigation, as well as being denied summer and per session work and loss of preferences regarding classroom assignments for the following school year.

2. Plaintiff seeks economic and compensatory damages and punitive damages to the extent allowable by law, and other appropriate legal and equitable relief.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 as this matter involves federal questions.

4. This action's venue properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391, because defendant NYCDOE's headquarters are located in New York County, New York.

5. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and has pendent jurisdiction over Plaintiff's state and city law claims.

## PARTIES

6. Plaintiff is a resident of the State of New York and City of New York.

7. At all times relevant herein, Defendant Dennis Walcott was the Chancellor of the New York City Department of Education.

8. At all times relevant herein, Defendant Jennifer Jones-Rogers was the principal of Public School 29 ("P.S. 29"), a school within the New York City Department of Education.

9. At all times relevant herein, Defendant Christine Milton was an assistant principal of Public School 29 ("P.S. 29"), a school within the New York City Department of Education.

10. At all times relevant herein, Defendant Scott Wolfson was an assistant principal of Public School 29 ("P.S. 29"), a school within the New York City Department of Education.

11. All defendants routinely conduct business within the Southern District of New York.

## STATEMENT OF FACTS

12. Plaintiff began her career with Defendant NYCDOE in 1995 as an elementary school teacher, and in 2000, she began working full-time at Public School 29 ("P.S. 29") in Queens, New York.

13. In 2003, Plaintiff began a childcare leave. She worked part-time at P.S. 29 until 2005, at which point she took full childcare leave from teaching. Plaintiff received all Satisfactory and positive observations from the school administration before taking her childcare leave.

14. Beginning in March 2011, Plaintiff expressed her intention to return to P.S. 29 as a full-time elementary school teacher. She contacted the new Principal of the school, Defendant Jennifer Jones-Rogers, indicating her intent to return. Principal Jones-Rogers immediately discouraged Plaintiff from returning, stating that there was no place for Plaintiff at P.S. 29 and that she did not belong in the school. Only after Plaintiff contacted the central Human Resources department for the NYCDOE did Principal Jones-Rogers have to relent and allow Plaintiff to return to her school.

15. Principal Jones-Rogers immediately retaliated against Plaintiff for returning to P.S. 29 by subjecting her to a hostile work environment. What began as inappropriate comments and ridicule in front of other faculty members and students escalated to

disciplinary letters, counseling memos, negative informal observations, and logs of assistance—the first negative criticisms Plaintiff had received in her career. Additionally, Principal Jones-Rogers would impose numerous requirements on Plaintiff that no other teachers would have to do for the sole purpose of harassing her, something which other faculty members recognized.

16. On or about January 11, 2012, a meeting was held at the District 25 office with Plaintiff's union, the UFT, to address Principal Jones-Rogers' mistreatment of Plaintiff. Present at the meeting were UFT Borough Representative Rona Freiser, UFT District Representative Joe Kessler, Network Leader Diane Foley, CSA Representative Tom Fox, UFT Chapter Leader Stephanie Flunory, Principal Jones-Rogers and Plaintiff. Ms. Flunory was not allowed to join the meeting and Plaintiff was asked to stay out of the meeting until the end, at which point she joined the meeting. Near the end of the meeting, it was agreed among all parties that Principal Jones-Rogers would not harass Plaintiff any longer, nor would she be allowed to rate her as Plaintiff's direct supervisor.

17. Unfortunately, this meeting did not stop the harassment and hostile work environment Plaintiff experienced from her school administration. Plaintiff noticed a distinct change in AP Milton's behavior towards her. She became hostile and dismissive immediately following the January 2012 meeting. This harassment and retaliation escalated into AP Milton issuing Plaintiff the first Unsatisfactory observation of her career in March 2012.

18. This Unsatisfactory observation was completely unwarranted and is evidence of further retaliation and harassment of Plaintiff, as the written observation report contained factually inaccurate statements that were clearly made up by the administration.

19. Furthermore, this observation should never have taken place, as Plaintiff elected an alternative assessment system instead of a formal assessment system, as is her contractual right under the UFT-DOE contract. However, in a letter dated March 7, 2012, Principal Jones-Rogers stated in violation of the contract that she would be requiring Plaintiff to be rated in a formal assessment system only.

20. Plaintiff continued to be retaliated against and harassed by her administration. For example, on or about March 1, 2012, Principal Jones-Rogers issued a disciplinary letter to Plaintiff with false allegations of "poor judgment". Notwithstanding that the allegations contained in the letter were false, Plaintiff was once against held to a higher standard than her colleagues, as many of her colleagues engaged in the same behavior alleged in the letter—which she denied doing in the first place—and never received any disciplinary action. Other forms of harassment that Plaintiff faced included being forbidden to speak to parents without her Principal present; harassment and abuse of her students by the administration; and public humiliation by being called down to the Principal's office over the loudspeaker to be scolded for petty and ridiculous things.

21. On or about April 3, 2012, a second meeting was held with the UFT and NYCDOE regarding Principal Jones-Rogers' hostile behavior towards Plaintiff. Present at this meeting was Ms. Freiser, Mr. Kessler, Ms. Foley, Ms. Milton, Mr. Fox and Principal Jones-Rogers. An agreement was made that Plaintiff would receive a Satisfactory end of the year rating in exchange for transferring to a different school for the 2012-13 school year.

22. On or about May 24, 2012, Plaintiff was still not able to secure a transfer to another school. When Principal Jones-Rogers learned of this, she threatened Plaintiff with

an Unsatisfactory end of the year rating ("U rating") if she did not secure a transfer from P.S. 29 by September 2012.

23. Plaintiff sought a position at several schools during the summer of 2012 because of this threat, but was unsuccessful in securing a placement. As such, she returned to P.S. 29 for the 2012-13 school year.

24. As soon as she returned, Principal Jones-Rogers picked up where she left off and immediately began her harassing treatment of Plaintiff again. In August 2012, Principal Jones-Rogers incorrectly stated that Plaintiff was required to be formally observed since she had received an Unsatisfactory observation during the previous school year. Principal Jones-Rogers also made comments, on or about August 16, 2012, implying that Plaintiff would be receiving an Unsatisfactory rating for the 2012-13 school year, before the school year even started. When Plaintiff later grieved that she should be placed on an alternative assessment system instead of a formal observation system, as is her contractual right because she received a Satisfactory end of the year rating for the 2011-12 school year, Principal Jones-Rogers summarily denied the grievance.

**IMMEDIATE RETALIATION FILING OF SDHR COMPLAINT**

25. On or about October 26, 2012, Plaintiff filed a discrimination complaint with the New York State Division of Human Rights against her school principal Jones and administration claiming age and gender discrimination.

26. Immediately after filing that complaint, on or about November 2012, Principal Jones-Rogers retaliated against Petitioner by causing her to be rated Unsatisfactory on several observations by the Assistant Principals of the school, reporting her to the Office of Special Investigation ("OSI"), writing up a disciplinary letter against her for cell phone

6

use, and placing her on a log of assistance. Each and every one of these documents was later used to justify Plaintiff's first ever end of the year U evaluation for 2012-13.

27. In April 2013, Plaintiff received a letter from Superintendent Danielle DiMango notifying her that the OSI investigation against her, which began shortly after she filed her SDHR complaint, had been substantiated. Particularly noteworthy is that her teacher colleague, Maria Isopo, who engaged in the same conduct for which the OSI investigation was based on by also not reporting the principal as well for her own misconduct even though she was present, did not receive any such disciplinary letter.

28. In December 2012, Plaintiff filed a supplemental SDHR complaint for retaliation by the school administration against her based on these new retaliatory events, as well as an improper practice charge with the New York State Public Relations Board for retaliating against her for her union activities and filing grievances against the Principal.

29. In further retaliation for filing these complaints and charges, Plaintiff was targeted in the Spring of 2013 with additional logs of assistance, negative ratings, and disciplinary letters, culminating in June 2013 with Plaintiff receiving her first ever Unsatisfactory end of the year rating ("U-rating") for the 2012-13 school year, which has the effect of freezing her salary, denying her the opportunity to do per session and summer work opportunities, and prevented her from pursuing other promotional opportunities. As stated previously, Plaintiff had never before received an end of the year U rating. Such end of the year ratings are cumulative ratings based on a teacher's pedagogy *for the entire school year.* As such, it is supposed to reflect a teacher's performance for the school year. Though Plaintiff received her U evaluation for the 2012-13 school year in June 2013, the documentation on which it relied began in November 2012, shortly after she filed her SDHR

complaint. There is no documentation on which the 2012-13 U evaluation relies upon that was issued prior to Plaintiff's SDHR complaint.

30. Plaintiff applied for a number of different positions at different schools during the summer of 2013, but was unsuccessful in transferring from the school in large part because of the unwarranted Unsatisfactory annual rating she received. Plaintiff also was denied her preference to teach a lower grade for the 2013-14 school year.

31. Although the 2013-14 school year had just commenced, Principal Jones-Rogers has already begun her harassing treatment of Plaintiff. Specifically, Plaintiff did not receive any of her three preferences for grade levels for the 2013-14 school year, and was instead placed into the fourth grade in violation of the UFT-DOE collective bargaining agreement.

32. All conditions precedent to jurisdiction under the ADEA and ADA have occurred or been complied with. Plaintiff filed timely complaints of gender and age discrimination and retaliation with the New York State Division of Human Rights ("SDHR") and the Equal Employment Opportunity Commission ("EEOC"). Plaintiff received a Notice of Right to Sue letter from the EEOC dated July 3, 2013. A copy of the Notice of Right to Sue letter is annexed hereto as Exhibit A.

## FIRST CLAIM FOR RELIEF
## TITLE VII AND ADEA RETALIATION

33. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

34. Defendants violated Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act (ADEA) by retaliating against Plaintiff for filing a protected complaint of age and gender discrimination with the New York State Division of Human Rights in October 2012. This retaliation occurred in the form, *inter alia*, of numerous adverse employment actions shortly after filing the protected complaint. Specifically, almost immediately after filing the SDHR complaint, the school principal (upon information and belief) falsely reported her to the NYCDOE Office of Special Investigation in November 2012 for not reporting the very same principal for verbally abusing the students in her class, even though the alleged incident of the principal's misconduct had actually occurred in March 2012. Only after Plaintiff filed her SDHR complaint was this investigation against her suddenly launched eight months later.

35. In addition, the school principal immediately increased her scrutiny of Plaintiff by also giving her multiple false unsatisfactory observations in November 2012 and December 2012 (subsequently overturned in grievance and PERB proceedings). Plaintiff also received an Unsatisfactory observation in May 2013, and a disciplinary letter in May 2013 for asking for a demonstration lesson from her school principal, and another disciplinary letter from her principal for alleged insubordination in June 2013. All of these retaliatory events accumulated to culminate in Plaintiff receiving her first ever annual

APPR Unsatisfactory evaluation for the 2012-13 school year (which are only given at the end of the school year in June of each year). This U annual evaluation was entirely based on documentation placed in Plaintiff's filed *after* she filed her SDHR protected complaint of gender discrimination in October 2012.

36. This Unsatisfactory annual APPR evaluation also had the automatic effect of freezing Plaintiff's salary increase and further prevented her from participating in summer work and per session activities that she intended to apply for but knew would be futile given the known adverse consequences of a Unsatisfactory annual rating.

37. As a direct and proximate result of Defendants' aforementioned discriminatory conduct, Plaintiff suffered monetary damages, as well as humiliation, emotional distress, mental and physical anguish and suffering, and damage to her professional reputation, in an amount to be determined at trial.

38. Noteworthy, though Plaintiff's 2012-13 U evaluation was subsequently reversed at PERB in February 2014, this did not occur until almost a year later. This Court has held that even in situations where an Unsatisfactory annual rating was subsequently reversed, the original U rating still qualifies as an adverse employment action. *See, e.g.*, *Dressler v. N.Y. City Department of Education*, 2012 U.S. Dist. LEXIS 44249, at *44-45 (S.D.N.Y. March 28, 2012) (holding that a rational fact-finder could determine that plaintiff's U rating was intended as retaliation for plaintiff's leave and reversed only to avoid liability, and denying DOE's motion for summary judgment in teacher ADEA case).

39. Additionally, courts have recognized that a jury could plausibly find the temporary loss of plaintiff's "per session" employment, together with other available evidence of animus based on age, materially adverse for purposes of a plaintiff's federal

discrimination claims against the DOE. *See Herling v. New York City Dep't of Educ.*, 13-CV-5287, 2014 WL 1621966 (E.D.N.Y. Apr. 23, 2014) ("Denying an employee the opportunity to work overtime, comp time, or additional per-session employment may . . . constitute an adverse employment action."); *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006) (preventing plaintiff from earning overtime and comp time and requiring only the plaintiff to request overtime in writing may constitute adverse employment action); *Dimitracopolous v. NYCDOE*, 14 CV 476 (E.D.N.Y. June 4, 2014). Since the U rating was not reversed until February 2014, Plaintiff still was unable to do summer work for the Summer of 2013 or any per session work until after February 2013, and thus it was futile to apply for such work.

## JURY DEMAND

40. Plaintiff hereby demands a trial by Jury.

## PRAYER/DEMAND FOR RELIEF

WHEREFORE, Plaintiff demands judgment in its favor against Defendants as follows:

a) On Plaintiff's **First Claim for Relief—Retaliation in Violation of Title VII and Age Discrimination in Employment Act**, damages in an amount to be determined at trial;

b)     On all Claims for Relief:

    a. Judgment declaring that Defendants acts violated Plaintiff's rights as secured by federal state and city law prohibiting retaliation in employment;

b. Enjoining defendants from any further acts adversely affecting the terms and conditions of Plaintiff's employment including his compensation and privileges;

c. Compensatory damages to compensate Plaintiff for breach of contract, economic loss, damage to name, profession, career and reputation, pain and suffering, emotional distress and mental anguish, embarrassment, indignity, and dislocation, in an amount to be determined at trial;

d. Punitive damages against one or all of the Defendants;

e. Statutory attorneys' fees, interest, costs, and disbursements, and

f. For such other and further legal, equitable or other relief as the Court deems just and proper.

DATED: New York, New York
November 18, 2014

        GLASS KRAKOWER LLP
        100 Church Street, 8th Floor
        New York, NY 10007
        (212) 537-6859

        By: _____s/_____
             Bryan Glass, Esq.